# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

HSBC BANK USA, NATIONAL             )
ASSOCIATION, as Trustee, in trust   )
for the registered holders of ACE   )
Securities Corp. Home Equity Loan   )
Trust, Series 2006-NC3, Asset Backed )
Pass-Through Certificates,          )
                                    )
            Plaintiff,              )
                                    )
v.                                  )   Docket No. 2:19-cv-00291-NT
                                    )
DONNA M. LOMBARDO,                  )
                                    )
            Defendant.              )

## ORDER ON DEFENDANT'S MOTION FOR ORDER TO REFER CASE TO FORECLOSURE DIVERSION PROGRAM

Before me is the Defendant's motion requesting that I refer this case to Maine's Foreclosure Diversion Program (the "**FDP**") for mediation. ("**Def.'s Mot.**") (ECF No. 33). For the reasons stated below, the motion is **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2009, in the midst of a statewide foreclosure crisis, Maine enacted legislative reforms intended "to protect homeowners alleged to be in default on residential mortgages." *JPMorgan Chase Bank v. Harp*, 10 A.3d 718, 720 n.5 (Me. 2011); *see* Rep. of the Jud. Branch Comm'n on Foreclosure Diversion (June 8, 2009), at 8–9, ECF No. 33-2 ("**2009 Comm'n Report**").[1] The judicial commission that designed the FDP—a

---

[1]    The Defendant requests that this Court take judicial notice of the 2009 Commission Report, Def.'s Mot. 4 n.4 (ECF No. 22), and the Plaintiff's response indicates no objection, *see generally* Pl.'s Opp'n to Def.'s Mot. to Refer Case to Foreclosure Diversion Program and Obj. to the Court Taking Judicial Notice ("**Pl.'s Opp'n**") (ECF No. 34). However, as the Defendant points out, the 2009

design that the legislature later adopted—was concerned about the lack of "meaningful opportunity" for homeowners "to avoid foreclosure by contacting and negotiating with national lenders to obtain relief and avoid foreclosure[,]" even though a "majority of homeowners want to remain in their homes and obtain loan terms with which they can comply." *Id.* at 17–18. The legislature thus ordered the Law Court to "adopt rules to establish a foreclosure mediation program to provide mediation in actions for foreclosure of mortgages on owner-occupied residential property with no more than 4 units that is the primary residence of the owner-occupant." 14 M.R.S. § 6321-A(3). The Law Court subsequently created the FDP by promulgating Maine Rule of Civil Procedure 93 ("**Maine Rule 93**").

Section 6321-A and Maine Rule 93 require prompt court referral to mediation in any applicable foreclosure action where a homeowner files an answer or otherwise appears. 14 M.R.S. § 6321-A(6); Me. R. Civ. P. 93(c)(3). The original designers of the FDP posited that early intervention would give borrowers "a meaningful opportunity to workout defaulted loans early in the foreclosure process," which would "reduce the number of families who lose their homes to foreclosure." 2009 Comm'n Report 9 (internal quotations omitted). In particular, the designers thought it important that borrowers have access to loan counseling and legal assistance as a part of this process. *Id.*

---

Commission Report is a publication issued by a public authority, Def.'s Mot. 4 n.4, and is thus self-authenticating, *see* Fed. R. Evid. 902(5). I thus need not take judicial notice of it.

In line with these goals, the legislature created strict guidelines for FDP mediations, including qualifications for mediators. FDP mediators must be trained in "mediation and relevant aspects of the law related to real estate, mortgage procedures, foreclosure or foreclosure prevention" and "in using the relevant Federal Deposit Insurance Corporation forms and worksheets." 14 M.R.S. § 6321-A(7)(A)(1), (4). They must have knowledge of community-based resources and mortgage assistance programs. *Id.* § 6321-A(7)(A)(2), (3). And they must be "knowledgeable in principal loss mitigation and mortgage loan servicing guidelines and regulations." *Id.* § 6321-A(7)(A)(5).

Parties participating in the FDP are also obligated to mediate in good faith. *Id.* § 6321-A(12). A party's failure to mediate in good faith may result in sanctions, including an assessment of costs or fees or dismissal of the complaint. *Id.*; Me. R. Civ. P. 93(j); *see U.S. Bank, N.A. v. Sawyer*, 95 A.3d 608, 611–12 (Me. 2014). If mediation is not successful, the case is returned to the court's docket, and the litigation progresses. State of Me. Judicial Branch Foreclosure Diversion Program, Report to the Joint Standing Comm. on Health Coverage, Ins. & Fin. Servs. & the Joint Standing Comm. on Judiciary, 129th Legis., at 4 (Feb. 14, 2020) ("**2020 FDP Report**"), available at https://www.courts.maine.gov/reports_pubs/reports/pdf/fdp_2019_ar.pdf.

Prior to the enactment of the FDP, approximately seventy percent of homeowners facing foreclosure did not file an answer. 2009 Comm'n Report 18. Between 2010 and 2019, over one-quarter of foreclosure cases have participated in

mediation each year, ranging from twenty-six percent (in 2010) to fifty-six percent (in 2014). 2020 FDP Report 3. From 2010 through 2018, 61.6% of mediated cases were dismissed, and 36.1% resulted in a foreclosure judgment.[2] *Id.* at 5.

The Plaintiff purports to be the owner of a Note secured by a mortgage on the Defendant's residence, located in Wells, Maine. Am. Compl. ¶¶ 7–9, 20–21 (ECF No. 18). In September of 2019, the Plaintiff filed an Amended Complaint against the Defendant, asserting a claim of foreclosure and other claims related to the Defendant's alleged breach of the mortgage and Note. Am. Compl. ¶¶ 27–68. In its Amended Complaint, the Plaintiff invokes federal court jurisdiction on the basis of diversity. Am. Compl. ¶ 1. In her Answer, the Defendant requested that this case be referred to the FDP for mediation, Answer 9 (ECF No. 19), and subsequently filed a motion requesting the same, Def.'s Mot.

## LEGAL BACKGROUND

Pursuant to the Rules of Decision Act, 28 U.S.C. § 1652, when a federal court exercises diversity jurisdiction, it applies state substantive law but federal procedural law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 426–27 (1996) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). In determining whether a state law is substantive or procedural, the reviewing court must focus on whether disregarding the state law would "significantly affect the result of" the litigation. *Suero-Algarín v. CMT Hosp. Hima San Pablo Caguas*, 957 F.3d 30, 39 (1st Cir. 2020) (quoting

---

[2]    The remainder were still pending at the time of the most recent statistical evaluation. 2020 FDP Report 5.

*Gasperini*, 518 U.S. at 427). This question is not to be asked in a vacuum. Rather, it must be posed against the background of "the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Id.* (citation omitted) (quoting *Gasperini*, 518 U.S. at 428).

But "[w]hat are matters of substance and what are matters of procedure is difficult to distinguish, and the two are not mutually exclusive categories." *Godin v. Schencks*, 629 F.3d 79, 86 (1st Cir. 2010). When dealing with the relationship between the Federal Rules of Civil Procedure and a state statute that has both procedural and substantive components, the court begins with the question of whether "the federal rule is 'sufficiently broad to control the issue before the court.' " *Id.* (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 421 (2010) (Stevens, J., concurring)). If the answer is yes, the federal rule preempts the state law as long as it complies with the Rules Enabling Act.[3] *Id.*; *see Gasperini*, 518 U.S. at 427 n.7. But even if there is no valid federal rule to preempt the state law, "a federal court might nonetheless decline to apply state law if so declining would better advance the dual aims of *Erie*." *Godin*, 629 F.3d at 86. The court must also consider whether it "can give effect to the substantive thrust [of the state law] without untoward alteration of the federal scheme for the trial and decision of civil cases." *Suero-Algarín*, 957 F.3d at 39 (quoting *Gasperini*, 518 U.S. at 426).

---

[3]     All federal rules must comply with the Rules Enabling Act, which prohibits federal rules from "abridg[ing], enlarg[ing] or modify[ing] any substantive right." 28 U.S.C. § 2072.

## DISCUSSION

The Defendant argues that mandatory mediation in residential foreclosure cases is a substantive part of Maine law, which I am required to apply under *Erie* and its progeny. Def.'s Mot 9–20. The Plaintiff spends a significant part of its opposition arguing that I should not abstain and that I am obligated to exercise my jurisdiction in this case. Pl.'s Opp'n to Def.'s Mot. to Refer Case to Foreclosure Diversion Program and Objection to the Court Taking Judicial Notice 2, 4–6, 11 ("**Pl.'s Opp'n**") (ECF No. 34). The Plaintiff also contends that the FDP is procedural and not applicable in federal proceedings because it conflicts with procedural rules of this Court.[4] I begin with the jurisdictional arguments raised by the Plaintiff.

## I.   The Plaintiff's Jurisdictional Arguments

The Plaintiff's opposition primarily revolves around its contention that I have jurisdiction in this case and am obligated to exercise it. In essence, the Plaintiff seeks to reframe the Defendant's request for a referral to mediation as a motion to relinquish jurisdiction entirely. Pl.'s Opp'n 2 ("[T]he Defendant is requesting that this Court relinquish jurisdiction . . . ."), 5 (emphasizing the "unflagging obligation" to exercise its jurisdiction (internal quotations omitted)), 11 (implying that the Defendant seeks "to restrict the ability of the federal courts to process residential foreclosures"). The Defendant seeks nothing of the sort. And as I explain below, I see no reason why the FDP cannot occur in conjunction with federal court jurisdiction.

---

[4]      The Plaintiff also argues that I cannot take judicial notice of the facts outlined in Peter Hatem's declaration, which is attached to the Defendant's motion. Pl.'s Opp'n 8. Because I do not rely on any facts established by Mr. Hatem's declaration, I do not resolve this objection.

The Plaintiff begins by arguing that I should not abstain pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943),[5] primarily relying on two opinions from this Court, both filed in the same case, *Residential Mortgage Loan Trust 2013-TT2 v. Lloyd*. Pl.'s Opp'n 2–3. In *Lloyd*, after the plaintiff filed a federal complaint seeking a judgment of foreclosure, the defendant filed a motion to dismiss, arguing that this court should apply *Burford* abstention because of the existence of the FDP. *Residential Mortg. Loan Tr. 2013-TT2 v. Lloyd*, 183 F. Supp. 3d 189, 190 (D. Me. 2016). Judge Hornby concluded that *Burford* abstention was not appropriate and denied the motion to dismiss. *Id.* at 194, 197.

> Undeterred, Lloyd filed a second motion, this time stating the following:
>
> The court should issue an order staying proceedings in this case, with instructions to the Plaintiff to file an action in the Maine state court system in which Defendant Lloyd may request and receive the foreclosure mediation process provided for by Maine law. Such order of this court may be conditioned upon Defendant's Lloyd's agreement or stipulation that she will stipulate to the dismissal, without prejudice and without costs, of the state court proceeding that Plaintiff will be required to commence. Upon the completion of that mediation process and the issuance of a final mediation report, Plaintiff can file that report with this court, and the requested stay can be lifted.

*Lloyd*, 2:15-cv-00466-DBH, ECF No. 60, at 2 (D. Me. May 19, 2016). Judge Hornby denied this motion, finding that it was an attempted end-run around his previous

---

[5]     Pursuant to the *Burford* abstention doctrine, "[w]here timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.' " *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)).

order and that it clearly conflicted with Federal Rule of Civil Procedure 16. *Residential Mortg. Loan Tr. 2013-TT2 v. Lloyd*, No. 2:15-cv-00466-DBH, 2016 U.S. Dist. LEXIS 89328, at *2–4 (D. Me. July 11, 2016).

*Lloyd* and this case involve different issues. The Defendant asks me to refer the parties to mediation in the FDP on the theory that she has a substantive state right that must be preserved under the *Erie* doctrine. In *Lloyd*, the first opinion dealt exclusively with *Burford* abstention, an argument not raised by the Defendant here. In the second *Lloyd* opinion, Judge Hornby explicitly found it "unnecessary to parse" *Erie* and its progeny given that he had no authority to order the plaintiff to file a state court lawsuit, and such an order would be in obvious conflict with the Federal Rules of Procedure. *Id.* at *2–3.[6]

This is not a case about jurisdiction. This is a case about the *Erie* doctrine.[7] There is a difference between giving effect to a state law with the aim of confining

---

[6]   Ultimately, the second *Lloyd* opinion distinguished in a footnote a First Circuit case involving Maine's mandatory pre-screening mechanism in medical malpractice cases, which applies in federal court. *Residential Mortg. Loan Tr. 2013-TT2 v. Lloyd*, 2:15-cv-00466-DBH, 2016 U.S. Dist. LEXIS 89328, at *3 n.2 (D. Me. July 11, 2016) (citing *Daigle v. Me. Med. Ctr., Inc.*, 14 F.3d 684 (1st Cir. 1994)). *Lloyd* distinguished *Daigle* on the grounds that Maine's medical malpractice screening procedure, unlike the FDP, occurs prior to a lawsuit's filing. *Id.* However, a separate First Circuit case that *Lloyd* did not address, *Feinstein v. Massachusetts General Hospital*, 643 F.2d 880 (1st Cir. 1981), vitiates this distinction. *Feinstein* involved a similar medical malpractice screening procedure under Massachusetts law, but the Massachusetts procedure was not triggered until an answer was filed. 643 F.2d at 881. The First Circuit held that the federal courts were required to follow the Massachusetts malpractice screening procedure even though it occurred after a complaint and answer were filed in federal court. *See id.* at 887. The Plaintiff ignores *Feinstein* and its implications for the distinction noted in *Lloyd*. *See* Pl.'s Opp'n 8.

[7]   Six of the foreclosure cases that the Plaintiff cites for support do not analyze or even mention any cases in the *Erie* family and are beside the point. One addressed the question of whether foreclosure actions can be brought in federal court where diversity jurisdiction exists. *See Synovus Bank v. Stevens Law Firm*, No. 4:19-cv-01411-RBH, 2019 WL 4014720, at *3 (D.S.C. Aug. 26, 2019). Two analyzed whether the federal court should abstain in light of New York law. *U.S. Bank Tr., N.A. v. Adhami*, No. 18-CV-530 (PKC) (AKT), 2019 WL 486086, at *3–6 (E.D.N.Y. Feb. 6, 2019); *Gustavia Home, LLC v. Nunu*, No. 16-CV-3989-RJD-SJB, 2018 WL 3574869, at *6 (E.D.N.Y. July 25, 2018). One

litigation to the state courts and simply giving state substantive law the same application in federal court as in state court, as *Erie* compels. *Cf. Feinstein v. Mass. Gen. Hosp.*, 643 F.2d 880, 888 (1st Cir. 1981) ("No ouster of federal jurisdiction results when, by reason of the policies expressed in *Erie*, a federal court requires that a state's rule barring an action from proceeding in its courts must be applied to bar the action from the federal court."). The Defendant seeks referral to the FDP not to keep foreclosure cases out of federal court but to require this Court to respect the policy choices of Maine and thereby comply with the principles of federalism underlying the *Erie* doctrine. *See id.* at 887–88.

The Plaintiff also cursorily argues that federal court referral to the FDP would violate the *Rooker-Feldman* doctrine. Pl.'s Opp'n 10–11. This argument is likely waived for failure to develop it. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Nevertheless, the *Rooker-Feldman* doctrine only applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). That is not this case.

---

did apply state law. *Courchevel 1850 LLC v. Stern*, No. 17-CV-1794, 2018 WL 3193210, at *6 (E.D.N.Y. June 28, 2018). One resulted in a stipulated foreclosure, and the docket contains no order on the Plaintiff's cited date. *See generally MidCap Funding Investment II LLX v. Spectrum Manchester Realty*, 3:18-cv-1469-KAD (D. Conn. Nov. 14, 2018). The last resulted in a default judgment, and the only orders filed on the Plaintiff's cited date were form orders. *See generally Citimortgage v. Peterson*, 3:17-cv-334-AWT (D. Conn. Feb. 23, 2017).

Having addressed the Plaintiff's jurisdictional strawman, I now turn to the real crux of the matter, that is, whether the *Erie* doctrine requires me to refer parties in residential foreclosure cases to the FDP.

## II.  Whether *Erie* Requires this Court to Mandate Participation in the FDP

### A.  Evaluating Section 6321-A and Maine Rule 93

The FDP's mandatory mediation requirement in residential foreclosure cases has both procedural and substantive components. Section 6321-A and Maine Rule 93 are procedural in that they establish rules governing mediation, but "[r]ules which lawyers call procedural do not always exhaust their effect by regulating procedure." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 555 (1949). Indeed, because Maine enacted § 6321-A and promulgated Maine Rule 93 to protect homeowners from avoidable foreclosures, "the State's objective is manifestly substantive." *See Gasperini*, 518 U.S. at 429 (concluding that New York law requiring appellate judicial review of jury damages awards was in part substantive because it was designed to cap such awards).

While procedural in terms of its literal design, in practice the FDP marked a substantive change in Maine law. *Cf. Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 203 (1956) ("If the federal court allows arbitration where the state court would disallow it, the outcome of litigation might depend on the court-house where suit is brought."). The creation of the FDP can only be properly understood in the context of the foreclosure crisis that it was designed to mitigate. As mentioned above, the FDP was created with the goal of educating homeowners and offering them an opportunity

10

to communicate with their lenders to explore options to avoid foreclosure. The decline in the percentage of foreclosure cases resulting in a judgment of foreclosure suggests that the FDP has advanced the State's substantive purpose. The FDP's substantive nature is made more apparent by the language of § 6321-A(9), *see* 14 M.R.S. § 6321-A(9) ("[A] final judgment may not issue until a mediator's report has been completed . . . ."), and by the Law Court's declaration that proof of completed mediation is one of "the eight elements of proof to support a judgment of foreclosure" under Maine law, *see Bank of Am., N.A. v. Greenleaf*, 96 A.3d 700, 708 (Me. 2014). The specialized training required of FDP mediators is also indicative of the substantive heft of the program because it demonstrates that the FDP mediators are intended to play a meaningful role in the process beyond that of simply a neutral third party.

There is First Circuit precedent on the application of an analogous state procedure that was animated by substantive policy goals. Massachusetts enacted a law that was intended to address an insurance crisis caused by a dramatic increase in malpractice claims that had driven up insurance rates for physicians and made it difficult for them to obtain malpractice coverage. *Feinstein*, 643 F.2d at 885. The law requires all medical malpractice cases, after an answer is filed, to be heard by a special tribunal consisting of a judge, a physician, and an attorney, during which the plaintiff must "make an 'offer of proof' of the evidence supporting his or her claim." *Id.* at 881 (quoting Mass. Gen. Laws. Ch. 231 § 60B). Under the Massachusetts law, the tribunal is charged with determining whether the plaintiff has sufficient evidence "to raise a legitimate question of liability appropriate for judicial inquiry or whether

the plaintiff's case is merely an unfortunate medical result." *Id.* at 881–82 (quoting § 60B). If the tribunal determines the latter, the plaintiff can still pursue the action but must file a bond with the clerk of court that is payable to the defendant should the defendant prevail. *Id.* at 882. If the plaintiff fails to post the bond within thirty days, the case "shall be dismissed." *Id.* (quoting § 60B).

The First Circuit decided that federal courts sitting in diversity were required to follow Massachusetts' screening procedure in medical malpractice cases for three main reasons. *See id.* at 890. First, the court observed that Massachusetts had enacted § 60B in order to discourage frivolous medical malpractice claims and that it had adopted the aforementioned procedure in order "to serve these substantive policy objectives." *Id.* at 885. The court thus concluded that federal courts were obligated to apply this procedure unless there was an "overriding federal interest in not applying the statute." *Id.* Second, the court found it significant that § 60B created a new liability by requiring plaintiffs to post a bond if they failed to convince the tribunal of the merits of their case. *Id.* at 886. Third, the court concluded that the failure to apply the requirement of § 60B in federal court would encourage forum-shopping by plaintiffs wishing to avoid this screening procedure. *Id.* "It would result in inequitable administration of the law by compelling a defendant sued in federal court to [forgo] the procedural protection and substantive right to recovery of costs afforded by section 60B 'solely because of the fortuity that there is diversity of citizenship between the litigants.' " *Id.* (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 753 (1980)). In sum, the court concluded that refusing to apply § 60B would undercut

Massachusetts' policy goals behind the passage of the statute, which is inconsistent with the principles of federalism underlying the Rules of Decision Act and *Erie*. *Id.* at 886–87.

The First Circuit's analysis in *Feinstein* is instructive here. Just as Massachusetts enacted § 60B as a procedural mechanism to achieve its substantive policy goal of reducing frivolous medical malpractice cases, Maine enacted the FDP as a procedural mechanism to achieve its substantive policy goal of reducing avoidable foreclosures. And just as § 60B created a new liability by potentially forcing plaintiffs to post a bond, the FDP created a new liability by potentially subjecting parties who fail to mediate in good faith to sanctions.[8] Finally, just as a failure to apply the procedure required by § 60B would incentivize plaintiffs in medical malpractice cases to seek out a federal forum, allowing plaintiffs in foreclosure cases to circumvent the FDP would provide a strong incentive to file in federal court.[9]

The Plaintiff fails to deal with *Feinstein*. Instead, in support of its observation that Maine Rule 93 is a pure rule of procedure, the Plaintiff relies primarily on § 6321-A's placement within Title 14 of the Maine Revised Statutes and the broader context of Maine's foreclosure statutory scheme. Pl.'s Opp'n 9. First, the Plaintiff points out that the FDP is statutorily housed within Title 14 of Maine's legal code, which is entitled "COURT PROCEDURE – CIVIL." Pl.'s Opp'n 9. A cursory review of the

---

[8]      It does not matter that not all parties engaging in mediation will be sanctioned. *Cf. Feinstein*, 643 F.2d at 886 ("This difference in the procedure by which the statutory liability is determined should not lead to a different result.").

[9]      I discuss this forum-shopping incentive in greater detail in Part II.D of this Order.

contents of Title 14 makes clear that this moniker is not dispositive. Despite its procedural label, Title 14 is home to a number of incontrovertibly substantive laws,[10] including the very cause of action that underlies Count I of the Amended Complaint.[11] Second, the Plaintiff cites a litany of procedures that Maine has instituted as part of its foreclosure laws but assumes without analysis that these procedures would not be applicable in federal court. Pl.'s Opp'n 9. *But see U.S. Bank Tr., N.A. v. Jones*, 330 F. Supp. 3d 530, 537–38 (D. Me. 2018) (granting judgment for defendant on foreclosure count where plaintiff failed to prove strict compliance with the ostensibly procedural but practically substantive notice requirement found in 14 M.R.S. § 6111), *aff'd*, 925 F.3d 534 (1st Cir. 2019). Even if some of these provisions are strictly procedural and not applicable in federal court, the Plaintiff fails to explain how that would impact the analysis of the FDP.

I conclude that the FDP has both procedural and substantive components, and that the FDP's procedural design "is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *See Godin*, 629 F.3d at 89 (quoting *Shady Grove*, 558 U.S. at 424 (Stevens, J., concurring)). Accordingly, I turn to the question of whether there is a federal rule that is sufficiently broad to control the issue at hand, that is, whether the parties can be compelled to mediate.

---

[10]     Additionally, Maine's tort actions for defective or unreasonably dangerous goods and wrongful imprisonment are both found in Chapter 14. 14 M.R.S. §§ 221, 8241.

[11]     *See* 14 M.R.S. §§ 6101–6326; *Bank of Am., N.A. v. Greenleaf*, 96 A.3d 700, 704 (Me. 2014).

**B.    Whether Federal Rule of Civil Procedure 16 and Local Rule 83.11 Are Sufficiently Broad to Control the Issue**

The Plaintiff contends that mandatory mediation conflicts with Federal Rule of Civil Procedure 16 ("**Rule 16**") and Local Rule 83.11 and thus § 6321-A and Maine Rule 93 must give way. Pl.'s Opp'n 3–4, 7. The Plaintiff argues that because Rule 16 and Local Rule 83.11 both address alternative dispute resolution ("**ADR**"), they must govern in federal court. Pl.'s Opp'n 7.

As previously noted, when a federal procedural rule is "sufficiently broad to control the issue before the court," that rule governs, regardless of any state law to the contrary, unless the federal rule violates the Rules Enabling Act. *Godin*, 629 F.3d at 86 (quoting *Shady Grove*, 559 U.S. at 421 (Stevens, J., concurring)). In analyzing whether a federal rule is "sufficiently broad," the court considers whether the federal and state rules can coexist. *See id.* at 87–88. If the federal rule and the state law are irreconcilable, the federal rule prevails, so long as it is valid under the Rules Enabling Act. *See Shady Grove*, 559 U.S. at 410 (plurality opinion); *id.* at 421 (Stevens, J., concurring); *Godin*, 629 F.3d at 87–88. But if the federal rule does not attempt to answer the same question or address the same subject as the state law, that suggests that the federal rule is not sufficiently broad and it will not displace state law. *See Godin*, 629 F.3d at 88.

I begin with the Plaintiff's contention that there is a conflict between the FDP and Rule 16. Pl.'s Opp'n 3–4. Rule 16 allows federal courts to "us[e] special procedures to assist in resolving the dispute when authorized by statute or local rule." Fed. R. Civ. P. 16(c)(2)(I). The First Circuit has recognized that Rule 16 contemplates judicial

authority to mandate ADR.[12] *In re Atl. Pipe Corp.*, 304 F.3d 135, 142 & n.3 (1st Cir. 2002) ("[Rule 16] acknowledges the presence of statutes and local rules or plans that may authorize use of some ADR procedures even when not agreed to by the parties." (quoting Fed. R. Civ. P. 16 advisory committee's note to 1993 amendment)). District courts around the country mandate various ADR procedures. *See generally* U.S. Dep't of Just., *ADR in the Federal District Courts—District-by-District Summaries* (rev. Mar. 2016), https://www.justice.gov/archives/olp/file/827536/download;[13] *see also* Memorandum from Rya W. Zobel, Dir. of the Fed. Jud. Ctr., on ADR Act of 1998 (Dec. 7, 1998) (on file with Court) ("Courts . . . are also authorized to require parties to use mediation . . . ."). Mandatory ADR is entirely consistent with the "special" dispute resolution procedures that Rule 16 permits, but does not require, a federal court to employ.

Rule 16 specifically allows the usage of dispute resolution procedures where authorized by statute, and here, a Maine statute (§ 6321-A) not only allows a court to order mediation but requires it.[14] Mediation under the FDP is not binding. Cases that

---

[12]   Interestingly, the authority of a district court to require mediation also exists separate and apart from Rule 16, as part of the district courts' inherent authority. *See In re Atl. Pipe Corp.*, 304 F.3d 135, 142, 145 (1st Cir. 2002) (holding that district court had inherent authority to mandate mediation even where mediation was not permitted under Rule 16 because no statute or local rule authorized it).

[13]   For example, mediation is mandatory in certain civil cases in the Southern District of Florida and Western District of Missouri. *See* S.D. Fla. L.R. 16.2(d); W.D. Mo. L.R. 16.4. In the District of New Jersey, judges may refer a case to mediation even where parties do not consent. D.N.J. Civ. R. 301.1(d).

[14]   The parties do not address whether it should make any difference that the statutory authority arises from a state statute rather than a federal one, but I see no reason why it should. Rule 16 unambiguously states that courts may use "special procedures to assist in resolving the dispute when authorized by statute or local rule." Fed. R. Civ. P. 16(c)(2)(I). Notably, many Federal Rules specify that only federal statutes are relevant reference points. *See, e.g.*, Fed. R. Civ. P. 4(k) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by a federal statute."); *id.* 12(a)(1) (specifying time to serve a responsive pleading "[u]nless another time is specified by this rule or a federal statute"); *id.* 54(d)(1) ("Unless a federal statute, these

are not successfully mediated through the FDP are returned to the court's docket, which shows that while participation in the FDP is mandatory, reaching an agreement is not.[15] Because the results of the FDP are not binding, any federal case referred to the FDP that is not successfully mediated would be returned to the federal court's docket, where the judge could allow—or require—additional mediation. Simply put, the FDP does not clash with Rule 16.[16]

Although it is apparent that Rule 16 does not conflict with Maine's law requiring mandatory non-binding mediation, the Plaintiff's second argument—that participation in the FDP conflicts with Local Rule 83.11—is more persuasive. Pl.'s

---

rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."). This specification of "federal statutes" in some parts of the Federal Rules but not in others would be surplusage if all references to statutes exclusively encompassed federal statutes. *Cf. Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1659 (2017) (describing the "surplusage canon," meaning "the presumption that each word Congress uses is there for a reason").

[15]      That distinction is important, because while I have no doubt that a district court has the inherent authority to mandate *nonbinding* mediation, it does not appear that a federal court could mandate *binding* mediation. *See* 28 U.S.C. § 652(a) ("Any district court that elects to require the use of alternative dispute resolution in certain cases may do so only with respect to mediation, early neutral evaluation, and, if the parties consent, arbitration."); *Atl. Pipe,* 304 F.3d at 141 (noting that Alternative Dispute Resolution Act of 1998 requires party consent for a district court to order arbitration but not to order nonbinding mediation).

[16]      In support of its argument that the FDP conflicts with Rule 16, the Plaintiff cites two cases from the Eastern District of New York. One case held that a New York law conflicted with Rule 16, *see Kondaur Cap. Corp. v. Cajuste*, 849 F. Supp. 2d 363, 371 (E.D.N.Y. 2012), and the other followed suit without further analysis, *see Gustavia Home, LLC v. Rice*, No. 16 Civ. 2353 (BMC), 2016 WL 6683473, at *5 (E.D.N.Y. Nov. 14, 2016). The court in *Kondaur* concluded that New York's law requiring mandatory mediation in foreclosure cases did not confer a substantive right. Since the defendant could have participated in a judicial settlement conference in federal court and had multiple opportunities to do so, the court determined that it was "unlikely a court-mandated settlement conference pursuant to [the New York law] would have any meaningful impact on settlement discussions between the parties at this point in the litigation." *See* 849 F. Supp. 2d at 371. The New York law is not before me, and the court in *Kondaur* did not address whether the New York law was "so intertwined with a state right or remedy that it functions to define the scope of the state-created right" under *Shady Grove. See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 423 (2010) (Stevens, J., concurring). To the extent that *Kondaur* is on point, it is not binding on me.

Opp'n 7. Local Rule 83.11 states that "[l]itigants are authorized and encouraged to employ, at their own expense, any available ADR process on which they can agree." D. Me. Loc. R. 83.11(a). Local Rule 83.11 also creates "court-annexed ADR" in which the Court's district and magistrate judges are made available "to conduct early neutral evaluation and settlement conferences with counsel and the parties." *Id.* 83.11(c). "This court-annexed ADR is voluntary and nonbinding . . . ." *Id.* Litigants in most civil cases are directed to "consider all ADR options." *Id.* 83.11(b)(1).

The language of Local Rule 83.11 implies that judges of this District are not authorized to mandate mediation. The First Circuit has also suggested, albeit in dicta, that Local Rule 83.11 does not allow for mandated mediation. *See Atl. Pipe*, 304 F.3d at 143. And the minutes from District meetings prior to the adoption of Local Rule 83.11 confirm that it was the intention of the Local Rules Committee and the Court to establish a system of purely voluntary mediation. *See, e.g.*, U.S. Dist. Ct. Dist. of Me., Minutes of Admin. Meeting, Jan. 24, 2000, at 1 (on file with Court) ("[I]t is the view on the federal side that ADR be voluntary."); U.S. Dist. Ct. Dist. of Me., Minutes of Admin. Meeting, Mar. 29, 1999, at 2 (on file with Court) ("[T]he [ADR program] will not alter the present status of ADR very much, but will alert counsel that ADR is available though not mandatory."); Local Rules Comm., Minutes, Mar. 5, 1999, at 3 (on file with Court) ("The approach recommended by the ADR committee was to require consultation among counsel and consideration of alternative dispute resolution, but not to require engaging in such processes."). I thus interpret Local Rule 83.11 to not only permit voluntary mediation but to prohibit mandated

mediation.[17] Although district judges have inherent authority to order mediation in appropriate cases, *Atl. Pipe*, 304 F.3d at 145, I conclude that the judges of this Court have relinquished this inherent authority by adopting Local Rule 83.11, *see id.* at 143 (explaining that some district courts have prohibited some forms of ADR).

Given this, the Plaintiff is correct that Local Rule 83.11 is sufficiently broad to control the issue and conflicts with Maine's mandatory mediation requirement. Since this direct conflict cannot be resolved,[18] I proceed to analyze whether Local Rule 83.11 is a valid rule under the Rules Enabling Act under these circumstances.

### C.     Whether Local Rule 83.11 Is a Valid Rule in Foreclosure Cases

All federal rules must comply with the Rules Enabling Act, which prohibits federal rules from "abridg[ing], enlarg[ing] or modify[ing] any substantive right." 28 U.S.C. § 2072. A state law need not yield to a rule invalidated by the Rules Enabling Act. *See Godin*, 629 F.3d at 86 & n.12. "[W]hether a Federal Rule [of Civil Procedure] is valid under the Rules Enabling Act depends not on the Federal Rule alone, but also on the nature of the state rule it seeks to displace." *Id.* at 87. Thus, "[t]he critical question is not 'whether the state law at issue takes the form of what is traditionally described as substantive or procedural,' but rather 'whether the state law actually is

---

[17]      Looking strictly at the plain meaning of its text, it would be possible to interpret Local Rule 83.11 as leaving room for mandatory mediation. A preference for voluntary participation in mediation is not the same thing as a prohibition against mandatory mediation. Although interpreting the rule in this manner would be consistent with this Court's obligation to interpret federal rules "with sensitivity to important state interests and regulatory policies," *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 n.7 (1996); *see also Shady Grove*, 559 U.S. at 405 n.7, because of the First Circuit's view that Local Rule 83.11 "permit[s] only voluntary mediation," *see Atl. Pipe*, 304 F.3d at 143, and because of the clear evidence that the rule was intended to permit *only* voluntary mediation, the most faithful interpretation of Local Rule 83.11 is that it does not allow for mandatory mediation.

[18]      The Plaintiff does not engage with this next step of the analysis.

19

part of a State's framework of substantive rights or remedies.' " *Id.* (quoting *Shady Grove*, 559 U.S. at 419 (Stevens, J., concurring)). "[T]his inquiry under the Rules Enabling Act 'may well bleed back' into the inquiry of whether a Federal Rule is sufficiently broad to control the issue before the court . . . because a Federal Rule 'cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right.' " *Id.* (quoting *Shady Grove*, 559 U.S. at 422–23 (Stevens, J., concurring)).

The analysis with respect to a local rule, as here, is slightly different than the analysis that applies to Federal Rules under the Rules Enabling Act. *Compare Stern v. U.S. Dist. Ct. for Dist. of Mass.*, 214 F.3d 4, 13 (1st Cir. 2000), *with* 28 U.S.C. § 2072. This is because a district court's authority to enact local rules is narrower than the Supreme Court's authority to enact the Federal Rules of Civil Procedure. *See Stern*, 214 F.3d at 13. Local rules, must be constitutional, rational, and "consistent with, but not duplicative of, Acts of Congress and nationally applicable rules of practice, procedure, and evidence." *Id.* Local rules cannot subvert the purpose of a national rule, and they can only cover "interstitial matters." *Id.* And, similar to the requirement for Federal Rules under the Rules Enabling Act, local rules "may not create or affect substantive rights or institute 'basic procedural innovations.' " *Id.* (internal citation omitted) (quoting *Miner v. Atlass*, 363 U.S. 641, 650 (1960)).

I have already concluded that the FDP contains substantive components and has a substantive effect on outcomes. It is part of the framework of substantive rights

20

established by § 6321-A and Maine Rule 93, and it is so intertwined with the State's substantive reforms to its foreclosure laws that it functions to define the scope of the state-created right. I thus conclude that the prohibition on mandatory mediation enshrined in Local Rule 83.11 cannot be validly applied in this context. Because that prohibition infringes upon a defendant's right to participate in the FDP in a residential foreclosure case, Local Rule 83.11 exceeds the capacity of a local rule and cannot be invoked to bar the application of the FDP to cases filed in federal court.

Two additional points are worth emphasizing. First, this does not mean that Local Rule 83.11 is facially invalid. It no doubt has purely procedural applications that do not affect substantive rights. The bottom line is that Local Rule 83.11 cannot govern in situations where it would displace substantive state law, as here, *see Godin*, 629 F.3d at 87, but that does not change its ability to operate where it does not exceed these boundaries. Second, the aspect of Local Rule 83.11 that encourages voluntary mediation remains applicable here. In the event that mediation within the confines of the FDP is not successful, the parties are free to continue to mediate in federal court. It is in this manner that "the principal state and federal interests can be accommodated," *Gasperini*, 518 U.S. at 436–37, and that the FDP and Local Rule 83.11 can coexist.

### D.     The Dual Aims of *Erie*

The final aspect of this analysis is to determine whether a referral to the FDP is consistent with the dual aims of *Erie*—discouraging forum-shopping and avoiding inequitable administration of the law. If declining to enforce state law would encourage forum shopping and impede equitable administration of the law, then state

law applies. *Godin*, 629 F.3d at 91. No doubt mortgagees seeking to speed up the foreclosure process would like to avoid the FDP. *See* Pl.'s Opp'n 9–10. Were it possible to jettison this compulsory mediation by filing a federal complaint, there would be a strong incentive for mortgagees to pursue foreclosures on residential properties in federal court. *Cf. Godin*, 629 F.3d at 92 ("[W]ere [Maine's anti-SLAPP[19] law] not to apply in federal court, the incentives for forum shopping would be strong . . . .").

The increase in the number of foreclosure cases filed in this district, as compared to the simultaneous decline in the number of such cases filed in state court, is illustrative. In 2010—the first full year of the FDP—only two civil real property disputes were filed in this Court by private plaintiffs, versus 169 last year. *See Caseloads Statistics Data Tables*, Administrative Office of the United States Courts, *available at* https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables. In contrast, 5,409 foreclosure cases were filed in state court in 2010, as compared to only 1,664 last year. *Compare* Jesse D. Stewart, *Maine's Foreclosure Mediation Program: What Should Constitute A Good Faith Effort to Mediate?*, 64 Me. L. Rev. 249, 272 (2011), *with* 2020 FDP Report 3. Two things about these numbers are striking. First, real property disputes in federal court increased over 8,000% in nine years. Second, this increase occurred while foreclosure cases filed in state court *declined* by over one-third. I do not discount that multiple variables may have caused these inverted trends, but the strong scent of forum-shopping is difficult to miss.

---

[19]     "Strategic litigation against public participation."

It is also noteworthy that one of the reasons why the designers of the FDP sought to mandate mediation was because of the difficulty homeowners seeking to avoid foreclosure had in successfully contacting and negotiating with national lenders, in contrast to the greater accessibility of Maine-based financial institutions. 2009 Comm'n Report 17. In other words, homeowners with out-of-state lenders were struggling in ways that homeowners with Maine lenders were not. Allowing out-of-state lenders to avoid the FDP by pursuing foreclosures in federal court would revive this exact disparity that the designers of the FDP sought to avoid. The FDP sought to promote equitable administration of the law by giving homeowners equal opportunity to negotiate with their lenders, regardless of their lenders' citizenship. Mandating compliance with the FDP in federal court is consistent with this substantive goal of the program.

The people of Maine, through their elected representatives, opted to enact a law with the stated goal of preventing avoidable residential foreclosures. Declaring that the FDP has no application in federal court would nullify the force of the FDP in significant part by creating a sizable loophole. It would also mean that a Maine homeowner's ability to mediate would depend on the fortuity of the citizenship of its lender. And while the Plaintiff claims that state mediation would engender additional delay, "the federal interest in ensuring uniformity of outcome by applying the state rule in [foreclosure] actions brought in federal courts far outweighs any burden imposed by the [mediation] requirement" on the federal court proceedings. *See Feinstein*, 643 F.2d at 890 (footnote omitted).

Although the Plaintiff questions the ability of a federal court to refer a case to the FDP, Pl.'s Opp'n 3, this Court has previously done so,[20] and I am aware of no issues caused by having done so.[21] To be clear, the referral of a case to the FDP does not mean that the Maine state court system is required to accept these referrals. I am ordering the parties to apply to the FDP; it is up to the FDP to decide whether and how to accept federal referrals.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Defendant's motion (ECF No. 33).

In accordance with Maine Rule 93(c)(1), the Defendant shall file within fourteen days of this order the notice and any other required documents necessary to initiate mediation pursuant to the FDP. Within seven days of learning whether the case has been accepted for mediation, the parties shall file a joint status report with the Court notifying the Court whether mediation will proceed. If the case is accepted for mediation by the FDP, the parties shall participate in good faith and comply with all applicable requirements. The parties shall file a joint status report with the Court

---

[20]     *See PennyMac Loan Servs. LLC v. Charron*, 2:19-cv-00070-JDL, ECF No. 33 (D. Me. Jan. 21, 2020); *U.S. Bank Tr., N.A. v. Brichetto*, 2:16-cv-00387-JDL, ECF No. 17 (D. Me. Nov. 14, 2016).

[21]     Several years before *Feinstein*, the Supreme Judicial Court of Massachusetts opined that federal courts might utilize the state's medical malpractice tribunal procedure and did not give any indication that it thought such a process would be problematic. *See Austin v. Bos. Univ. Hosp.*, 363 N.E.2d 515, 519 (Mass. 1977) ("[I]f it is determined that a tribunal should pass on a particular medical malpractice action brought in a Federal court . . . then, on appropriate reference to the Superior Court, a § 60B tribunal will be appointed and act on the matter, after which its findings will be transmitted to the clerk of the Federal court."). Nor does the Plaintiff point to any problems with medical malpractice cases proceeding in federal court under Massachusetts law over the last forty years.

every ninety days while the mediation process remains ongoing, and they shall file a joint status report with the Court within fourteen days of the completion of the mediation process.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 19th day of October, 2020.